IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MIKEL BROOKS,

      Plaintiff,

v.                                      Case No. 20-1074-JWB

JEFF EASTER; BOARD OF COUNTY
COMMISSIONERS OF SEDGWICK
COUNTY, KANSAS; BOARD OF COUNTY
COMMISSIONERS OF MEADE COUNTY,
KANSAS; and MARK MILLER,

      Defendants.

**MEMORANDUM AND ORDER**

This case comes before the court on a motion to dismiss by Defendants Jeff Easter (hereinafter "Easter") and Sedgwick County Board of County Commissioners (hereinafter "Sedgwick County"). (Doc. 21.) The motion has been fully briefed and is ripe for decision. (Docs. 22, 27, 34.) For the reasons set forth herein, the motion to dismiss is GRANTED.

**I. Background and Facts**

The following factual allegations are taken from the amended complaint. (Doc. 11.) Easter is the Sedgwick County Sheriff and is responsible for operation of the Sedgwick County Adult Detention Facility (the "Sedgwick County jail.") (*Id.* at 2.) Defendant Miller is the Sheriff of Meade County and is responsible for operation of the Meade County Adult Detention Facility (the "Meade County jail.") (*Id.*) In 2017, Easter and Sedgwick County designated the Meade County jail as a place of confinement for inmates committed to Easter's custody. The arrangement was

pursuant to a July 10, 2017 written agreement between Sedgwick County and Meade County (the "jail contract"), a copy of which was attached to Plaintiff's initial complaint. (Doc. 1-1.)

Sedgwick County and Easter allegedly knew when the jail contract was entered that Kansas law prohibited smoking in governmental buildings[1] and that exposure to secondhand smoke was harmful to those exposed to it. (Doc. 11 at 4-5.) They also allegedly knew or were deliberately indifferent to the fact that Meade County permitted Miller to sell cigarettes to inmates at the Meade County jail and permitted them to smoke indoors. Sedgwick County and Easter allegedly knew or were deliberately indifferent to the fact that inmates at the Meade County jail were regularly exposed to excessive levels of secondhand smoke. (*Id.* at 5.)

In May of 2018, Plaintiff was detained on City of Wichita charges for failure to appear. (*Id.* at 6.) On June 7, 2018, Easter and Miller detained Plaintiff at the Meade County jail. (*Id.*) Plaintiff suffered from asthma at the time, which substantially limited his ability to breathe. (*Id.*) While he was at the Meade County jail, Plaintiff was placed in a 660 to 700 square foot unit with approximately twenty inmates, at least half of whom smoked, forcing Plaintiff to breathe secondhand smoke. (*Id.*)

Sedgwick County and Easter allegedly knew about the unsafe and illegal conditions because they conducted audits in 2017 and 2018 pursuant to the jail contract and learned that smoking was permitted at the Meade County jail. (*Id.*) They nevertheless determined that living conditions at the Meade County jail were acceptable for Sedgwick County inmates. (*Id.*) Plaintiff suffered from asthma during his confinement, inhaled large amounts of secondhand smoke, coughed, was sick, and felt his lungs burning. He complained to jailers and filed grievances over

---

[1] The amended complaint cites no source for this legal conclusion. Defendants assert this is a reference to the Kansas Indoor Clear Air Act, K.S.A. 21-6109 et seq., which they argue is inapplicable to jails because it applies to a "public space," defined in the Act as "enclosed areas open to the public or used by the general public." (Doc. 34 at 9) (citing K.S.A. 21-6109(n)).

the conditions. He was transferred out of the Meade County jail in the second week of August 2018. (*Id.* at 7.) Plaintiff was thus incarcerated at the Meade County jail for approximately two months.

Plaintiff alleges the law was clearly established by 2018 that the Eighth Amendment prohibits state actors from exposing inmates to levels of secondhand smoke that pose an unreasonable risk of serious damage to their future health.[2] (*Id.*) He alleges Defendants confined him in a jail that they knew had excessive levels of secondhand smoke, they failed to promulgate policies to protect inmates like him from secondhand smoke, and they failed to train or supervise staff on protecting inmates, particularly those with asthma, from unreasonably high levels of secondhand smoke. (*Id.* at 8.) Plaintiff alleges that Defendants, with deliberate indifference, exposed him to unreasonably high levels of secondhand smoke posing an unreasonable risk to his future health, in violation of the Eighth Amendment. (*Id.*) Plaintiff seeks relief against all Defendants (including the two sheriffs in their individual capacities) under 42 U.S.C. § 1983. (*Id.* at 9.) Plaintiff further alleges Defendants discriminated against him because of a disability (asthma), and he seeks damages from the two county Defendants for violation of Title II of the Americans with Disabilities Act (ADA). (*Id.* at 8-9.)

---

[2] The amended complaint refers only to the Eighth Amendment, and the motion to dismiss and accompanying briefs all refer exclusively to that amendment. The court accordingly addresses the motion by applying Eighth Amendment standards. The court notes that the Eighth Amendment protects the rights of convicted prisoners, whereas the Fourteenth Amendment protects the rights of pretrial detainees. *See Strain v. Regalado,* 977 F.3d 984, 989 (10th Cir. 2020). It is not clear from the complaint whether Plaintiff had been convicted of an offense at the time of his detention in Meade County or whether he was still a pretrial detainee. The Supreme Court has held that this distinction in status makes a difference in the standard governing excessive force claims. *See Kingsley v. Hendrickson,*576 U.S. 389 (2015). Nevertheless, the distinction makes no difference here. In *Strain* the Tenth Circuit rejected an argument that *Kingsley* altered the standard applicable to claims of deliberate indifference. *Id.* at 993. Accordingly, the standard governing Eighth Amendment claims of deliberate indifference to inmate health applies to Plaintiff's claim regardless of his status. *See id.* at 993 ("We therefore join our sister circuits that have declined to extend *Kingsley* to deliberate indifference claims and will apply our two-prong test to Plaintiff's claims.")

Defendants Easter and Sedgwick County move to dismiss the claims. Easter argues he is entitled to dismissal of the § 1983 claim on the basis of qualified immunity. (Doc. 22 at 9.) Sedgwick County argues it is entitled to dismissal of the § 1983 claim and the ADA claim because both counts fail to allege facts upon which relief can be granted against it. (*Id.* at 22, 24.)

## II. Standard

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). As the Tenth Circuit observed:

> Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide fair notice of what the claim is and the grounds upon which it rests. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts. If, in the end, a plaintiff's well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint fails to state a claim.

*Carbajal v. McCann*, No. 18-1132, 2020 WL 1510047, at *3 (10th Cir. Mar. 30, 2020).

## III. Analysis

### A. Easter – Qualified Immunity

Easter argues the allegations in the amended complaint fail to state a violation of Plaintiff's Eighth Amendment rights and that Plaintiff fails to show that Easter's alleged conduct violated clearly established law. (Doc. 22 at 13.)

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013). Qualified

4

immunity "shields public officials … from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). "If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

When the defense of qualified immunity is asserted, a plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460. For a right to be clearly established, the contours of that right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "It is not enough that the rule is suggested by then-existing precedent." *Dist. of Columbia v. Wesby,* 138 S. Ct. 577, 590 (2018). To be clearly established, the rule at issue "must be 'settled law'" dictated by controlling authority or a "robust 'consensus of cases of persuasive authority.'" *Id.* at 589-90. This does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). In the Tenth Circuit, "[a] law is clearly established 'when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains.'" *Bird v. Lampert*, No. 20-8009, 2020 WL 7351801, at *4 (10th Cir. Dec. 15, 2020) (quoting *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (brackets and internal quotation marks omitted)).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const., amend. VIII.³ "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (internal quotation marks omitted). The deliberate indifference standard includes both an objective and a subjective component. *See Strain v. Regalado,* 977 F.3d 984, 989 (10th Cir. 2020). The objective component is met "if the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause." *Sawyers v. Norton*, 962 F.3d 1270, 1283 (10th Cir. 2020) (quoting *Burke v. Regalado,* 935 F.3d 960, 991 (10th Cir. 2019)). *See also Riddle v. Mondragon,* 83 F.3d 1197, 1204 (10th Cir. 1996) (prisoner "must show that he is incarcerated under conditions posing a substantial risk of serious harm.") A prisoner must show that the risk is one that "society considers … so grave that it violates contemporary standards of decency to expose *anyone* to such risk." *Helling v. McKinney,* 509 U.S. 25, 36 (1993) (emphasis in original). "To satisfy the subjective component, the plaintiff must show the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Sawyers,* 962 F.3d at 1283 (quoting *Burke,* 935 F.3d at 992) (quoting *Farmer,* 511 U.S. at 837).

The plaintiff in *Helling* was a prisoner who alleged the defendants violated his Eighth Amendment rights by assigning him to a cell with another inmate who smoked five packs of cigarettes a day. *Helling,* 509 U.S. at 28. The plaintiff complained the defendants were jeopardizing his future health. *Id.* The Supreme Court affirmed a finding that the plaintiff stated a claim, rejecting an argument that only current health problems (as opposed to future ones) could support an Eighth Amendment claim. *Id.* at 34-35. Although the government argued the harm to any particular individual from environmental tobacco smoke ("ETS") exposure was speculative,

---

³ The Eighth Amendment is made applicable to the States by the Fourteenth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 101-02 (1976) (citation omitted).

6

that the risk was not sufficiently grave to constitute a serious medical need, and that exposure to ETS was not contrary to current standards of decency, the Supreme Court said it would be "premature" to reverse on these bases because the case was being remanded to permit the plaintiff to prove these things, and "[w]e cannot rule at this juncture that it will be impossible" for the plaintiff to prove a violation. *Id.* at 35. Thus, the plaintiff stated an Eighth Amendment cause of action by alleging "that petitioners have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Id.*

The court concludes Plaintiff has failed to show that Easter's alleged actions were contrary to clearly established law. The only case cited by Plaintiff is *Helling* itself, which according to Plaintiff "put Easter on notice that it is unacceptable to expose inmates to unreasonably high levels of secondhand smoke." (Doc. 27 at 6.) But the contours of the right recognized in *Helling* were not explored in that case, at least not in a way that would make it clear to all reasonable jail officials when ETS exposure creates an unreasonable risk to a prisoner's health and when it does not. *Helling* indicates that whether a particular exposure rises to the level of an Eighth Amendment violation is a fact-intensive inquiry dependent upon a number of circumstances. *See Helling,* 509 U.S. at 35-37 (discussing variables that could impact whether ETS exposure constituted an Eighth Amendment violation). Implicit in *Helling's* ruling was the premise that exposure to ETS on a lesser scale or in factual circumstances different from those alleged could fall below the threshold for an unreasonable risk to health, and thus would not violate the Eighth Amendment. A number of courts after *Helling* have recognized the decision "did not establish a constitutional right to a smoke-free prison." *Johnson v. Lappin,* 478 F. App'x 487, 489 (10th Cir. 2012) (citing cases). In *Johnson,*[4] for example, the plaintiff alleged he was exposed to ETS a few times a week over a

---

[4] Plaintiff argues Easter's reliance on unpublished cases is misplaced because only published authorities constitute clearly established law. (Doc. 27 at 6.) But although an unpublished opinion "provides little support for the notion

7

period of six months. *Id.* at 490. The Tenth Circuit said an allegation that a prisoner with asthma was exposed to minimal levels of ambient smoke does not necessarily state a constitutional claim, noting "[a]sthma conditions vary and courts have held that some asthmatic prisoners may even be permissibly celled with smokers, absent medical orders to the contrary." *Id.* at 492 (citing *Oliver v. Deen,* 77 F.3d 156, 160-61 (7th Cir. 1996)). Plaintiff has not alleged that he had a medical order requiring that he be housed in a nonsmoking cell.

As Plaintiff argues, some courts after *Helling* – although not the Tenth Circuit – have said it "was clearly established that prison officials could violate the Eighth Amendment through deliberate indifference to an inmate's exposure to levels of ETS that posed an unreasonable risk of future harm to the inmate's health." *Vega v. Semple,* 963 F.3d 259, 276 (2d Cir. 2020) (denying qualified immunity on a claim involving exposure of a prisoner to radon gas). But that assertion amounts to little more than a repetition of *Helling's* general holding, including its observation that exposure to an unspecified level of ETS *could* violate the Eighth Amendment. *Helling* noted that to prevail, the plaintiff in that case would have to prove that the level of exposure was in fact excessive and that

> determining whether [plaintiff's] conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Helling*, 509 U.S. at 36.

---

that the law is clearly established," an unpublished decision "can be quite relevant in showing that the law was *not* clearly established." *Mecham v. Frazier,* 500 F.3d 1200, 1206 (10th Cir. 2007); *Grissom v. Roberts,* 902 F.3d 1162, 1168 (10th Cir. 2018).

8

In the defense of qualified immunity, the clearly established standard "requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Wesby,* 138 S. Ct. at 590. The Supreme Court has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Id.* In deciding qualified immunity – as distinct from determining whether a violation has occurred – the central question is whether the contours of the right have been made sufficiently clear "that *every* reasonable official would have understood *that what he is doing* violates that right." *Ashcroft*, 563 U.S. at 741 (emphasis added). Viewing the law under that standard, it cannot be said that *Helling* established beyond dispute that housing a prisoner in a "600 to 700 square foot unit" (Doc. 11 at 6) with twenty other inmates, half of whom sometimes smoke, is an Eighth Amendment violation, even if that case indicates it *might be* a violation. *See Wesby*, 138 S. Ct. at 590 ("It is not enough that the rule is suggested by then-existing precedent."); *Mullenix,* 577 U.S. at 308 ("existing precedent must have placed the … constitutional question beyond debate.") *Helling* involved a single cell, not a common unit, and made no attempt to specifically delineate the degree or conditions of ETS exposure that pose an unreasonable risk of serious damage to a prisoner's future health. As indicated by *Thao v. Dobie,* No. 16-1098-PJH, 2017 WL 2806744, at *6 (N.D. Cal. June 29, 2017), the "undefined qualitative elements" discussed in *Helling* – i.e., creating "an unreasonable risk" of serious damage and exposing an inmate to "unreasonably high levels" of ETS – make qualified immunity applicable here because "no court has articulated a well-defined test that a reasonable prison official could look to in order to determine the lawfulness of his actions." *Id.* (finding qualified immunity as to prisoner's claim of exposure to asbestos). *Cf. Johnson,* 478 F. App'x at 492 (law was not clearly established where plaintiff alleged he was forced

to inhale secondhand smoke every time he entered or exited his housing unit; there was a "lack of definitive precedent involving the conditions at issue here, where fleeting and relatively minor exposure to outdoor smoke is claimed by a prisoner who alleged asthma but no ETS-related medical orders…."); *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002) ("Thus, a reasonable prison official understanding that he cannot recklessly disregard a substantial risk of serious harm, could know all of the facts yet mistakenly, but reasonably, perceive that the exposure in any given situation was not that high. In these circumstances, he would be entitled to qualified immunity.")

Because Plaintiff has failed to show the law was clearly established that Easter's treatment of Plaintiff violated Eighth Amendment standards, Easter is entitled to dismissal of the § 1983 claim against him based on qualified immunity.

### B. Sedgwick County – § 1983 Claim

Plaintiff claims Sedgwick County is liable for the alleged violation of his Eighth Amendment rights because Sedgwick County and Miller, with deliberate indifference, failed to enact policies at Meade County jail to protect inmates like Plaintiff from excessive levels of ETS, failed to train or supervise staff on protecting inmates from unreasonably high levels of ETS, and exposed Plaintiff to unreasonably high levels of ETS. (Doc. 11 at 8.) Sedgwick County and Easter argue Plaintiff fails to state a claim because the amended complaint does not allege facts establishing an improper municipal policy or custom, deliberate indifference, or causation of Plaintiff's alleged injury. (Doc. 22 at 24.)

Section 1983 allows relief against a person who, acting under color of state law, deprives another person of a federal right. *See* 42 U.S.C. § 1983. Local municipalities, including counties, are considered "persons" who may be liable under this provision. *Monell v. Dep't. of Soc. Servs.*,

436 U.S. 658, 690 (1978). But a municipality may not be liable under section 1983 simply because it employed a tortfeasor. *Id.* at 691. To state a claim for municipal liability in this context, Plaintiff must allege facts showing (1) the existence of an official municipal policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury alleged; and (3) deliberate indifference on the part of the municipality. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

Applying these standards to the amended complaint,[5] the court concludes the motion to dismiss this claim against Sedgwick County should be granted. To support a claim, Plaintiff must show that the challenged municipal action was taken with the requisite degree of culpability and there is a direct causal link between the municipal action and the deprivation of federal rights. *Bd. of Cty. Com'rs of Bryan Cty., Okla. v. Brown,* 520 U.S. 397, 404 (1997). Plaintiff alleges that Easter, the final decisionmaker for Sedgwick County, had a policy or custom of "fail[ing] to promulgate or enact any policy or procedure at Meade County Jail to protect inmates like Plaintiff" from excessive levels of secondhand smoke. (Doc. 11 at 8.) Plaintiff also alleges Easter failed to train or supervise staff on protecting inmates from unreasonably high levels of ETS. (*Id.*) Finally, the amended complaint alleges that Easter and Sedgwick County confined Plaintiff and exposed him to excessive ETS. (*Id.*) The amended complaint alleges these policies or actions were undertaken with deliberate indifference and caused the violation. Missing from the amended complaint, however, are factual allegations supporting the foregoing assertions of deliberate

---

[5] Defendants' motion to dismiss cited two Sedgwick County audits of the Meade County jail and a declaration by Captain Jared Schechter, the Sedgwick County Sheriff's officer who conducted the first audit. (Doc. 22-1.) The parties now agree that Schechter's declaration is a matter outside the pleadings that should not be considered in deciding the motion to dismiss. (Doc. 27 at 2; Doc. 34 at 1-2.) The parties further agree that the two audits were referenced in the amended complaint and may be properly considered in deciding the motion. (Doc. 27 at 1; Doc. 34 at 2.) The court accordingly will consider the audits but not Schechter's declaration. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (on a motion to dismiss the court can only consider exhibits attached to the complaint or that were incorporated into the complaint by reference).

indifference and causation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

"A municipality may be liable under § 1983 for a failure to train its employees or to institute a policy to avoid the alleged harm where the need to act 'is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.'" *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). A municipality is deliberately indifferent when it has "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation." *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998). Such notice can come from "the existence of a pattern of tortious conduct" or facts showing that a constitutional violation is a "'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction." *Id.* at 1307-08 (quoting *Bd. of Cty. Com'rs of Bryan Cty.,* 520 U.S. at 409)). The amended complaint alleges no pattern of prior tortuous conduct that put Easter on notice that a lack of training or policies relating to smoking was resulting in constitutional violations. *Cf. Bd. of Cty. Com'rs of Bryan Cty.* 520 U.S. at 407 ("If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish" deliberate indifference.) Nor does the amended complaint contain facts showing the alleged violation of Plaintiff's rights was a highly predictable or plainly obvious consequence of Easter's failure to adopt additional policies or require further training. There is no allegation that complaints of exposure to excessive ETS at the Meade County jail (or the Sedgwick County jail) were ever sent to or made known to Easter. The only specific factual allegation

12

concerning notice concerns the 2017[6] jail audit performed by Sedgwick County, which stated with respect to smoking at the Meade County jail: "Yes for his inmates but ours will be non-smoking." (Doc. 22-1 at 4.)  Assuming Easter was aware from this that Meade County inmates were permitted to smoke, that alone would not constitute notice that Easter's failure to act was substantially certain to result in a constitutional violation of Plaintiff's rights.  Plaintiff does not allege any facts to show that Easter was aware that the Meade County jail was being administered in a way that made a violation of Plaintiff's constitutional rights highly predictable.  *Cf. Bd. of Cty. Com'rs of Bryan Cty.* 520 U.S. at 406 ("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation…."); *Barney,* 143 F.3d at 1307 (when a municipal policy itself does not violate federal law, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.")  The allegations in the amended complaint fail to plausibly show that Easter was on notice that his inaction was causing or was highly likely to cause constitutional violations of the type complained of by Plaintiff.

This claim also requires Plaintiff to show a direct causal link between the challenged policies and the alleged violation of his rights.  *City of Canton,* 489 U.S. at 385.  But Plaintiff's allegations do not show that Easter's policies, customs, or training were the moving force behind the violation.  According to the complaint and the attached jail contract, the Meade County jail was administered by Miller and Meade County, not by Easter and Sedgwick County, and pursuant to the contract Meade County assumed responsibility to confine transferred Sedgwick County inmates and provide them humane, necessary, and appropriate treatment. (Doc. 1-1 at 3.)  In doing

---

[6] Plaintiff does not dispute that the 2018 audit was conducted in September of 2018 after his incarceration at Meade County had ended, such that it could not have been the basis of Easter or Sedgwick County knowing that Plaintiff would be exposed to excessive ETS at the Meade County jail.  (Doc. 27 at 5.)

13

so, Meade County represented that its jail administration "substantially complies with all constitutionally guaranteed rights of confined persons." (*Id.* at 7.) Indeed, Miller was legally responsible under Kansas law "for the manner in which [the jail] is kept." K.S.A. 19-1903. The amended complaint thus shows that Miller and Meade County determined the specific circumstances of Plaintiff's confinement. In view of these allegations, the amended complaint fails to show how Easter's actions or Sedgwick County's policies can plausibly be considered the moving force behind the alleged violation. *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1318 (10th Cir. 200) ("It is absolutely necessary to show that the execution of the government's policy or custom inflicted the injury in order to hold a municipality liable under § 1983.") (citation, internal quotation marks, and punctuation omitted.) A similar conclusion applies to the alleged failure of Easter to train or supervise Sedgwick County staff. It is not apparent how such a failure could be considered the moving force behind an alleged violation of Plaintiff's rights by administrators of the Meade County jail.

In sum, the amended complaint fails to allege facts plausibly showing Sedgwick County is liable under § 1983 for the alleged violation of Plaintiff's Eighth Amendment rights at the Meade County jail.

### C. Sedgwick County – ADA Claim

Plaintiff's ADA claim alleges that Easter and Sedgwick County "discriminated against Plaintiff because of his disability, asthma, and failed to offer reasonable accommodations for Plaintiff's asthma, in violation of Title II of the Americans with Disabilities Act." (Doc. 11 at 8.) Sedgwick County argues the amended complaint fails to state a claim because it does not include facts to show Sedgwick County intentionally discriminated on account of Plaintiff's asthma or that it intentionally failed to accommodate his asthmatic condition. (Doc. 22 at 25.)

Title II of the ADA, which prohibits a public entity from discriminating against a "qualified individual with a disability" on account of that individual's disability, applies to inmates in state prison. *Pa. Dep't of Corr. v. Yeskey,* 524 U.S. 206, 208 (1998). "To withstand dismissal on a Title II ADA claim, 'the plaintiff must allege that (1) [he] is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability.'" *Hockaday v. Colorado Dep't of Corr.*, 766 F. App'x 572, 574–75 (10th Cir. 2019) (quoting *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (internal quotation marks omitted). Discrimination under the ADA includes both intentional discrimination (disparate treatment) and failure to make a reasonable accommodation. *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016). "The ADA requires a public entity to provide a reasonable accommodation 'when it knows that the individual is disabled and requires an accommodation ... to participate in or receive the benefits of its services.'" *Hockaday,* 766 F. App'x at 575 (quoting *J.V.*, 813 F.3d at 1299 (internal quotation marks omitted)).

The court will grant the motion to dismiss this claim. The amended complaint fails to identify what act or acts by Sedgwick County were discriminatory, the manner of discrimination, what public entity services or benefits Plaintiff was denied by Sedgwick County, or what reasonable accommodation, if any, Plaintiff was denied by Sedgwick County. The allegations of disability discrimination are entirely conclusory.

### IV. Conclusion

The motion to dismiss of Defendants Jeff Easter and Sedgwick County (Doc. 21) is GRANTED.  The claims against these Defendants are hereby DISMISSED.

IT IS SO ORDERED this 11th day of January, 2021.

     s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE